UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **IFG PORT HOLDINGS, LLC** | **:** | **DOCKET NO. 16-cv-00146** |
| **VERSUS** | **:** | **JUDGE MINALDI** |
| **LAKE CHARLES HARBOR & TERMINAL DISTRICT** | **:** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Pursuant to a court order issued on March 1, 2016, defendant Lake Charles Harbor & Terminal District (the "Port") submitted to the court for *in camera* inspection its response to Request for Production of Documents No. 1 propounded by plaintiff, IFG Port Holdings, LLC ("IFG"). This production was so that the court could determine if the document should be produced or if it is subject to non-disclosure due to privilege.

The parties were given an opportunity to brief the issue and the matter is now ripe for ruling.[1] For the reasons that follow, the court finds that the document sought to be discovered is protected by the work-product privilege and is not subject to discovery. The Port's objection to the discovery is therefore **SUSTAINED**.

## I.
### BACKGROUND

In Request for Production of Documents No. 1, IFG seeks production of:

> [A] true and complete copy of the February 2, 2016 email that Mike Dees sent to various personnel at the Port and at Port Rail, Inc., consistent with earlier informal requests for this item dating back to February 5 -10 emails

---

[1] In its reply memorandum IFG additionally argues that the Port has failed to fully answer court ordered discovery. By way of Exhibit No. 3A to its memorandum, IFG has informed the court that the parties have resolved this dispute. Docs. 44, 46.

-1-

> on same, copies of which are collected in the attached Exhibit 1.  Produce both a paper copy and the Microsoft Exchange/Outlook electronic file for that email in its native file format.

Doc. 31, att.1, p. 8.  The Port objects to production of the email arguing that the email is protected by the attorney-client and the work-product privileges.  In response, IFG maintains that the email is not privileged or non-discoverable.  Alternatively it asserts that, if the court should find that the email is protected from disclosure by privilege, the privilege was waived by disclosing the contents of the email to an employee of a non-party and/or by a placing the contents of the email at issue.

## II.
### LAW AND ANALYSIS

### A.  The Attorney-Client Privilege

The attorney-client privilege rests on the need to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."  *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  The privilege applies only if: (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.  *Myers v. City of Highland Village*, 212 F.R.D. 324, 326 (E.D. Tex. 2003) (citing U.S. v. Kelly, 569 F.2d 928, 938 (5th Cir. 1978)).

Since the privilege protects only confidential communications, the disclosure of privileged communications to a third person eliminates the confidentiality of the privilege and waives the

privilege. *Hodges, Grant & Kaufmann v. U.S. Gov't, Dep't of the Treasury, I.R.S.,* 768 F. 2d 719, 721 (5th Cir. 1985). However, as the Port points out, the privilege is not waived if the privileged communication is shared with a third person who has a common legal interest. *See Id.* In *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710-13 (5th Cir. 2001), the court defined two types of communications protected under the common legal interest privilege: (1) communications between co-defendants in actual litigation and their counsel; and (2) communications between *potential* co-defendants and their counsel. With respect to the second category, the court noted that term "potential" had not been clearly defined but stated that "because the privilege is 'an obstacle to truthseeking,' it must 'be construed narrowly to effectuate necessary consultation between legal advisers and clients.'" *Id.* at 710 (citing *In re LTV Sec. Litig.,* 89 F.R.D. 595, 606 (N.D.Tex.1981).

The February 2, 2016, email was written by Mike Dees, in house counsel for the Port and Port Rail, Inc., on the advice of outside counsel and was distributed to various Port employees and an employee of the non-party Port Rail, Inc. The Port argues that since Port Rail, Inc. is a direct subsidiary of the Port, it shares a common legal interest with the Port.[2] We disagree. At the time the email was written the Port and Port Rail, Inc. were not co-clients being jointly represented in the ongoing litigation. Further, Port Rail, Inc. was not a potential client facing "a palpable threat of litigation at the time of the communication." *Id.* at 711. The privilege applies when the parties share a common legal interest, not a commercial or financial interest and it does not extend to communications about joint business strategy. *FSP Stallion 1, LLC v. Luce,* 2010 WL 3895914 *18 (U.S.D.C Nev. Sept. 30, 2010). IFG candidly admits that it has no intention of ever making Port Rail, Inc. a party to this litigation. Doc. 44, p. 5. Thus, if the email was in fact protected by

---

[2] The Port attached several exhibits to its supplemental memorandum which do support its assertion that Port Rail, Inc. is a subsidiary of the Port. Doc. 42, att. 3-4.

the attorney-client privilege, we find that the privilege was waived by disclosing the communication to an employee of a non-party.[3]

### B. The Work-Product Doctrine

The work-product doctrine "derives from the desire to facilitate effective advocacy." *In re Burlington Northern, Inc.*, 822 F.2d 518, 524 (5th Cir. 1987). The work-product doctrine is "distinct from and broader than the attorney-client privilege." *United States v. Nobles,* 422 U.S. 225, 238 n. 11 (1975). While the attorney-client privilege "exists to protect confidential information and is waived by disclosure of confidential information to third parties," the protection afforded work product exists to "promote the adversary system." *Shields v. Sturm, Ruger & Co.,* 864 F.2d 379, 382 (5th Cir. 1989). The voluntary disclosure to a third person does not necessarily waive the protection afforded to work product. *Id.* However, exposure to a third party can waive protection if such disclosure is "inconsistent with the maintenance of secrecy from the disclosing party's adversary." *Baricuatro v. Indus. Pers. & Mgmt. Servs., Inc.*, 2013 WL 3367137, at *4 (E.D. La. July 5, 2013). If work product is voluntarily disclosed "to an adversary or a conduit to an adversary" the protection for those documents is waived. *Id.* (citations omitted).

The scope of the work-product protection is defined in Rule 26(b)(3), which provides:

(A) Documents and Tangible Things. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But . . . those materials may be discovered if:
    (i) they are otherwise discoverable under Rule 26(b)(1); and
    (ii) the party shows that it has a substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

---

[3] Since we find that the attorney-client privilege was waived by disclosure to a third person, we need not discuss IFG's assertion of waiver by placing the contents at issue.

Fed. R. Civ. P. 26(b)(3)(A). The attorney work-product protection can thus be asserted to allow counsel a "certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel," in the absence of which "the interests of the clients and the cause of justice would be poorly served." *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947).

After examining the February 2, 2016 e-mail we find that it was prepared in preparation of litigation or trial, was written to provide legal assistance or advice, and contains legal impressions, strategies, or opinions. Thus, we conclude that it should be protected from disclosure. We also find that disclosure to the non-party Port Rail, Inc. does not waive the protection afforded the email. Port Rail, Inc. is not an "adversary or a conduit to an adversary" with respect to the Port.

Finally, we find that IFG has not shown that it has a substantial need for the email to prepare its case and that it cannot obtain a substantial equivalent of the content of the email by other means. While IFG asserts that it needs to know the "extent of misinformation and defamatory comments that have been spread around the Port and Port Rail, Inc., as part of establishing its damages," we find that these theories can be established by other means. Doc. 44, p. 6.

## III.
### CONCLUSION

Accordingly,

**IT IS ORDERED** The Port's objection to Request for Production of Documents No. 1 is **SUSTAINED**.

THUS DONE this 29th day of March, 2016.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE