UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

IFG PORT HOLDINGS, LLC                         CIVIL ACTION NO. 2:16-cv-0146

VERSUS                                         JUDGE TERRY A. DOUGHTY

LAKE CHARLES HARBOR &                          MAG. JUDGE KATHLEEN KAY
TERMINAL DISTRICT d/b/a
THE PORT OF LAKE CHARLES

RULING

Pending before the Court are related Motions to Vacate Referral to Magistrate Judge Pursuant to Fed. R. Civ. P. 73(b)(3) ("Motion to Vacate") [Doc. No. 483] and for Leave to Conduct Discovery ("Motion for Discovery") [Doc. No. 492] filed by Defendant Lake Charles Harbor & Terminal District ("the Port").  Plaintiff IFG Port Holdings, LLC ("IFG") has filed an opposition memorandum [Doc. Nos. 498 & 499].  The Port has filed a reply memorandum [Doc. Nos. 502 & 506].

For the following reasons, the Port's motions are DENIED.

I.      RELEVANT FACTS AND PROCEDURAL HISTORY

On January 29, 2016, IFG filed suit against the Port.   IFG constructed, operated, and maintains an export grain terminal at the Port.  IFG claims that the Port breached terms of the Lease Agreement between the parties and violated the Louisiana Unfair Trade Practices Act.

When initiated, this case was assigned to District Judge Patricia Minaldi and Magistrate Judge Kathleen Kay.

However, in December 2016,[1] Judge Minaldi took a leave of absence.  Somewhere around that time, Magistrate Judge Kay discussed with counsel the option of consenting to trial before her.  Further, during this discussion, Magistrate Judge Kay disclosed that the daughter of William Monk ("Monk"), IFG's lead counsel, was her law clerk at the time.  She explained that a "Chinese wall" would be enacted, so Monk's daughter did not work on or receive information about this case.  There is no allegation that Magistrate Judge Kay coerced counsel or acted improperly to obtain counsel's consent to referral of the case.

On January 27, 2017, counsel for both parties signed a written consent to have the case heard by Magistrate Judge Kay [Doc. No. 111].   Judge Dee Drell ordered the referral of the case on February 2, 2017.  [Doc. No. 113].

Magistrate Judge Kay has presided over the case since that time.  During the next three years, she ruled on various motions, some in favor of IFG and some in favor of the Port.  At no time prior to trial did the Port raise or express concerns that Magistrate Judge Kay's rulings evinced some bias against it and/or in favor of IFG.

An 18-day bench trial was held between March and April 2019, concluding on April 30, 2019.  [Doc. No. 412].  Following trial, in June 2019, the parties filed post-trial briefs.  [Doc. Nos. 443 & 444].  Magistrate Judge Kay then took the matter under advisement.  In the ensuing year, Magistrate Judge Kay continued to preside over and take actions in the case.  On July 31, 2020, she issued a 64-page Written Reasons for Judgment containing findings of fact and conclusions of law. [Doc. No. 464].  She concluded as follows:

> For the foregoing reasons we do find that the Lake Charles Harbor & Terminal District breached its contract with IFG Port Holdings, LLC, by failing to secure the appropriate permits that would allow IFG to complete its obligation to dredge to

---

[1]The Port states that Judge Minaldi took a leave of absence in 2017, but, regardless of the exact date her leave took effect, she was no longer actively managing a caseload by late December 2016, and her docket was reassigned to other district judges.

the depth designated in the contract by the time the facility opened in July of 2015. As a result of that breach the Lake Charles Harbor & Terminal District owes damages to IFG Port Holdings, LLC, in an amount to be determined as set forth in this opinion above.

If the Port had simply behaved as a responsible business entity and worked with IFG (as IFG showed a willingness to do) to address  the  permitting  problem quickly, these issues could have been resolved much sooner than they were. Judging by the correspondences from IFG it is possible there may never have been litigation if the Port had been reasonable in its handling of the situation.  Even if IFG had claimed damages though, reasonable reaction of the Port would have resulted in the damages being far less than that being awarded to IFG today.

Instead the Port chose  to  engage in a course of conduct that we have concluded to be offensive to established public policy and to be immoral, unethical, oppressive, and unscrupulous. And we further conclude the  course  of conduct  was engaged in deliberately by the Port for improper reasons, particularly to run IFG off the Port property.  For that we have awarded treble damages to IFG for the period set forth herein.  This finding further entitles IFG to an award of attorney fees and costs yet to be determined.

Finally, we find in favor of IFG for the declaratory and injunctive relief sought, namely that the Default Notices were improvidently issued, and we grant a mandatory injunction that the Port withdraw the outstanding Default Notices filed against IFG and its lender.  We also find that IFG is not in default of its lease with the Port and so declare.  The counter claims of the Port are all denied and will be dismissed with prejudice.

Formal judgment will be signed when the appropriate damages have been calculated and attorney fees and costs determined. A separate order will issue detailing further proceedings for establishing these matters.

[Doc. No. 464].

The Port contends that, after this unfavorable ruling, it decided that there must be some "basis" for the "harsh" statements made by Magistrate Judge Kay in her Written Reasons.  [Doc. No. 483-1, pp. 3-4].  The Port's former counsel, Matthew M. Mize ("Mize"), avers that he and his client were "surprised and shocked by some of the language and some of the findings of the court." [Doc. No. 483-2].  He then began conducting an "investigation" of the "relationships of the parties."  *Id.* In addition to the disclosed employment of Monk's daughter, Mize allegedly found

that Monk was once a groomsman for Magistrate Judge Kay's husband when they married years before and that Magistrate Judge Kay had officiated the wedding of another of Monk's daughters in late 2015.[2]  It is unclear from the affidavit when this investigation was conducted, by whom, or how Mize obtained this alleged information.  Mize avers that, "[h]ad the above-listed events, and the complete nature of the relationship between the Monks and Magistrate Judge Kay been disclosed, the Port and its counsel" would not have consented to the referral.  [Doc. No. 483-2].

In September 2020, current counsel replaced Mize.  In October 2020, over three and one-half years after the parties consented to referral and four months after Magistrate Judge Kay issued Written Reasons, the Port filed the instant Motion to Vacate [Doc. No. 483] and Motion for Discovery [Doc. No. 492].  In its Motion for Discovery, the Port requests leave to conduct discovery in support of its Motion to Vacate, particularly to take Monk's deposition.  Separately, the Port challenged subject matter jurisdiction in a Motion to Dismiss [Doc. No. 484].

On November 19, 2020, IFG filed a memorandum in opposition to the Motion to Vacate, and on November 27, 2020, IFG filed a memorandum in opposition to the Motion for Discovery. [Doc. Nos. 498 & 499].  On November 30, 2020, the Port filed a reply memorandum in support of its Motion to Vacate, and on December 4, 2020, the Port filed a reply memorandum in support of its Motion for Discovery [Doc. Nos. 502 & 506].

On January 5, 2021, after briefing was complete, the Court denied the Port's Motion to Dismiss, finding that there are sufficient facts and evidence to establish diversity jurisdiction. [Doc. Nos. 507 & 508].

The Court is now prepared to rule on the remaining motions before it.

---

[2]The Port alleges that Magistrate Judge Kay officiated the wedding approximately two months before the instant lawsuit was filed.  As the lawsuit was filed on January 29, 2016, the Court assumes that the Port is alleging that the wedding took place in late 2015.

## II.    LAW AND ANALYSIS

> Upon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court or courts he serves.

28 U.S.C. § 636(c)(1); *see also* Fed. R. Civ. P. 73(a).  A party's consent to trial before a magistrate judge must be voluntary.   *See* Fed. R. Civ. P. 73(b)(1); *McGinnis v. Shalala,* 2 F.3d 548, 551 (5th Cir. 1993); *Carter v. Sea Land Servs., Inc*., 816 F.2d 1018, 1021 (5th Cir. 1987); *see also* 28 U.S.C. § 636(c)(2) ("Rules of court for the reference of civil matters to magistrate judges shall include procedures to protect the voluntariness of the parties' consent." ).   The procedural rules and prior decisions of the Fifth Circuit required that the consent be in writing prior to trial.  Fed. R. Civ P. 73(b)(1); *Archie v. Christian*, 808 F.2d 1132 (5th Cir. 1987) (en banc).  However, the Supreme Court has held that a court can infer, from the parties' "conduct during litigation," their voluntary consent to a magistrate judge conducting "any or all proceedings in a jury or nonjury civil matter" under 28 U.S.C. § 636(c)(1)).  *Roell v. Withrow*, 538 U.S. 580, 582 (2003).[3]

If a party properly gives consent, he has no absolute right to withdraw consent and to have an Article III judge hear the case.  *Carter*, 816 F.2d at 1021.  However, "[t]he [district] court may, for good cause shown on its own motion, or **under extraordinary circumstances shown by any party**, vacate a reference of a civil matter to a magistrate judge."  28 U.S.C. §

---

[3]The *Roell* decision vacated the judgment of the Fifth Circuit that the parties' post-trial consent to a magistrate judge's trial of case under § 636(c)(1) could not cure the jurisdictional defect inherent in their failure to consent pretrial.  *See Withrow v. Roell*, 288 F.3d 199 (5th Cir. 2002), rev'd, 538 U.S. 580 (2003). To the extent that *Archie* requires written pretrial consent in all cases, that decision is inconsistent with *Roell*.  *See United States v. Underwood*, 597 F.3d 661, 665 (5th Cir. 2010) (citing *Roell* for the proposition that implied consent to a §636(c) referral to a magistrate judge is a question of law). Further, *Roell* also calls into question the validity of the Fifth Circuit's holding in *Murret v. City of Kenner*, 894 F.2d 693 (5ᵗʰ Cir. 1990), that "the *Archie* consent requirements are well within the grasp of [§636(c)(4)'s] extraordinary circumstances condition for vacating the reference."  *Id.* at 695.  Thus, the Port's reliance on these decisions is misplaced.

5

636(c)(4)(emphasis added); *see also* FED. R. CIV. P. 73(b)(3) ("On its own for good cause-or when a party shows extraordinary circumstances-the district judge may vacate a referral to a magistrate judge under this rule.").   Motions to vacate under § 636(c)(4) are committed to the discretion of the district court.  *See Lyn–Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 292 (5th Cir. 2002).

The Port does not base its motion on "any intentional acts of fraud, bias, or undue influence by the Magistrate Judge."  [Doc. No. 483-1, p. 8].  Rather, the Port argues that the Court should find good cause and extraordinary circumstances to vacate the referral to Magistrate Judge Kay because of her "lack of full disclosure" of her "relationship" with IFG's counsel, Monk, and "his family."  *Id*. at p.6.  In support, the Port cites the Court to case law and American Bar Association guidance on a judge's duties with regard to a lawyer who is a close personal friend.  In addition, relying in part on contract law principles, the Port contends that Magistrate Judge Kay's failure to fully disclose her connections to Monk vitiated its consent and/or rendered that consent invalid.

IFG responds that the "good cause" standard is inapplicable, the Port has not met the requirements to show that extraordinary circumstances exist, the Port has not shown bias or prejudice, and the Port's motion is untimely.  First, IFG points out that the statute allows a court to vacate a referral for good cause only on "its own motion," but requires a party to show extraordinary circumstances.  Second, IFG argues that the extraordinary circumstances standard is not met for multiple reasons.  It contends that Mize's affidavit is legally insufficient by only "vaguely" describing the "purported 'investigation.'"  [Doc. No. 498, p. 4].  IFG further contends that the facts alleged, even if accepted as true, do not meet the high bar necessary and run afoul of the factors set forth in *Carter*.  If the Court finds it appropriate to consider bias and prejudice

6

under the recusal statute as extraordinary circumstances, IFG argues that the Port's allegations are insufficient to support the type of bias requiring recusal.  Finally, IFG argues that the Port's motion is, in essence, an untimely motion to recuse for bias.

In its reply, the Port argues that each of IFG's responses is "flawed."  [Doc. No. 502].  It contends that the cited case law applies to recusal motions, not motions to vacate, and, thus, there is no "bias and prejudice" element to a motion to vacate.  The Port clarifies its argument that extraordinary circumstances includes errors in the process of consent.  The Port then again cites the Court to a Federal Circuit case, *CEATS, Inc., v. Cont'l Airlines, Inc.*, 755 F.3d 1356, 1365 (Fed. Cir. 2014), cited in its original motion,[4]  and to additional Texas state court cases, which it argues, support its contention that Magistrate Judge Kay's failure to disclose her other connections to Monk vitiated its consent.  Similarly, the Port argues, again, that its consent was not valid because of Magistrate Judge Kay's allegedly erroneous failure to disclose.  The Port elaborates as follows:

> The "extraordinary  circumstances" herein is the depravation of a valid and voluntary consent due to the nondisclosure of a long term relationship between Mr. Monk and Magistrate Judge Kay,  not some "extraordinary"  action, judgment, finding or ruling by Judge Kay (although the Port does dispute the Judge's findings) or some element of "judicial bias or prejudice" occurring during the proceedings.  The "extraordinary  circumstances"  is the failure of Magistrate Judge Kay to disclose all facts relating to her apparent relationship with Mr. Monk and his family so that the Port could weigh those facts and make a valid,  knowing decision to consent to referral.  Only then could the voluntariness of the Port's consent be "safeguarded[.]"

[Doc. No. 502, p. 5].  While the Port reiterates that its motion "is not based on any intentional acts of fraud, bias, or undue influence by the Magistrate Judge," it argues that "[t]he undisclosed facts are certainly relevant to 'the possibility of bias or prejudice on the part of the Magistrate

---

[4] [Doc. No 483-1, pp. 6-7].

[Judge].'"  [Doc. No. 502, p. 8 (quoting *Carter*, 816 F.2d at 1021)].  Finally, the Port contends that its motion is timely and Mize's affidavit is sufficient because Mize did not learn of the alleged facts until after judgment, was only "placed on notice" to conduct his investigation by the "tenor of the language utilized in the judgment," and the affidavit reflects his personal knowledge.  *Id.* at pp. 5-6.

The Court finds no basis to vacate the referral to Magistrate Judge Kay or to allow discovery, including the taking of Monk's deposition.  Both parties have analogized to other types of motions or areas of the law, but the Port did not file a motion for recusal or a motion to withdraw consent.  The Port chose to file a motion to vacate the referral to Magistrate Judge Kay and to thereby place the issue before the district court, rather than Magistrate Judge Kay herself.[5]  Accordingly, the motion is to be evaluated  under the standards applicable to a motion to vacate.

To that end, the Court is required to apply § 636[6] and the precedential case law interpreting that statute.  It is undisputed that, in light of Judge Minaldi's leave of absence, Magistrate Judge Kay discussed with counsel the option of consenting to trial before her.  It is further undisputed that, prior to their consent, Magistrate Judge Kay disclosed that Monk's daughter was serving as her law clerk, but would not have access to case information or participate in any way.  It is further undisputed that Magistrate Judge Kay neither coerced, strong-armed, or acted in any way improperly by offering counsel the options available to them once Judge Minaldi took a leave of absence, including the option to consent to proceed before

---

[5]In a footnote on the first page of its memorandum, the Port cites to Federal Rule of Civil Procedure 73(b)(3) and *Rivera v. Rivera*, 216 F.R.D. 655, 661 (D. Kan. 2003), for the proposition that a motion to vacate referral must be heard by the district judge.  In contrast, both a motion to withdraw consent to the referral or a motion to recuse would have been heard by Magistrate Judge Kay herself.  *See Carter v. Sea Land Servs., Inc.,* 816 F.2d 1018, 1021 (5th Cir. 1987); *Brown v. Oil States Skagit Smatco*, 664 F.3d 71, 76 (5th Cir. 2011) (magistrate judge denied motion for his recusal, and the district court denied this motion for review.).

[6]The Port cites the Court to Rule 73(c), but that rule merely restates the statutory requirements.

her. [7] The record provides undisputed evidence that, throughout this case Magistrate Judge Kay has issued numerous rulings, some of which were favorable to IFG and some of which were favorable to the Port.  Finally, it is undisputed that between January 2017 and the filing of the instant motions in October and November 2020, the Port has never alleged that Magistrate Judge Kay was biased, moved to withdraw the reference to her on any basis, or moved for her recusal.

Based on Mize's undefined "investigation," the Port contends that Magistrate Judge Kay failed to disclose "several . . . connections" to Monk, but then provides only the two "connections" set forth in this Ruling.  Every federal judge in the Western District of Louisiana provides a recusal list to the Clerk of Court.  The recusal list includes persons with whom the judge has such a close personal relationship that she could not be fair and impartial in matters involving that person.  Magistrate Judge Kay has such a recusal list, but Monk is not one of the persons listed.  It is often the case in relatively small legal communities, such as Lake Charles (and Monroe where the undersigned sits), that there may be some prior social and/or professional interactions.  However, the two alleged connections that the Port relies upon, Monk's long ago participation in Magistrate Judge Kay's wedding as a friend of her husband and her more recent officiation at a wedding for another of Monk's daughters, do not create a mandatory obligation of recusal.  In the Court's view, they are not even significant enough, standing alone, to require disclosure.  The Port has presented no case law, and the Court has found none, supporting the idea that the type of alleged lack of disclosure set forth in this motion constitutes extraordinary circumstances, so that the Court should exercise its discretion to vacate the referral to Magistrate Judge Kay four years after the parties consented.

---

[7] There is no allegation that Magistrate Judge Kay failed to advise counsel that the parties were free to withhold consent.

Further, to the extent applicable, the Fifth Circuit's *Carter* decision underscores this finding.  Both parties cite the Court to that decision for different purposes.  The Port relies on the decision for the unremarkable proposition that, if a party shows "his consent was obtained involuntarily or through undue influence, § 636(c) requires the authorization of withdrawal." 816 F.2d at 1021 (citing *Boykin v. Alabama*, 395 U.S. 238 (1969)).  IFG, on the other hand, urges the Court to consider the factors set forth in *Carter* to determine whether the reference to a magistrate judge should be vacated. The Court would note, first, that *Carter* was not a decision on a motion to vacate pursuant to §636(c)(4), but a decision of the sitting magistrate judge denying the plaintiff's motion to withdraw her consent.  *See* 816 F.2d at 1021 ("Carter presented the magistrate no legitimate reason to permit withdrawal of her consent. . . . On the other hand, the magistrate articulated several reasons for denying the motion.").  The Court recognizes, however, that the considerations for these two different types of motions  overlap and that the *Carter* factors have sometimes been applied in the context of motions to vacate.  *See, e.g., Cooley v. Foti*, No. CIV.A. 86-3704, 1988 WL 10166, at *6 (E.D. La. Feb. 5, 1988) ("[I]n determining whether there is good cause to vacate a reference, a district judge should consider a variety of factors[.]").

In *Carter*, the Fifth Circuit cautioned that "a court should consider a variety of factors," including undue delay, inconvenience to the court and witnesses, prejudice to the parties, whether the movant is acting *pro se*, whether consent was voluntary and uncoerced, whether the motion is made in good faith or is dilatory and contrived, the possibility of bias or prejudice on the part of the magistrate, and whether the interests of justice would best be served by holding a party to his consent.  816 F.2d at 1021.  In this case, four years after the parties voluntarily consented to trial before Magistrate Judge Kay, after countless hours spent by Magistrate Judge

Kay and the parties in pre-trial and trial proceedings, the Port has now hired new attorneys and moves to vacate the reference because it simply cannot believe that she ruled in favor of IFG and used what-it-terms harsh language in doing so.  Even at this stage, the Port denies that it is accusing Magistrate Judge Kay of bias, only that there is some possibility she might have been biased by her prior connections.  The Port would, thus, have the Court vacate the reference, re-open the 18-day trial in this matter, and any ruling by Magistrate Judge Kay which she would not have otherwise been authorized to render, based on her failure to disclose two connections to Monk and the speculative possibility that she suddenly became biased against the Port three years into the case.  The Court will not exercise its discretion to take this action under the circumstances alleged.[8]

"Assuring the voluntariness of consent is of fundamental importance since parties consenting to trial before a magistrate are, in effect, waiving their right to trial before an Article III judge."  *Murret v. City of Kenner*, 894 F.2d 693, 695 (5th Cir. 1990).  Magistrate Judge Kay recognized the importance of that duty, properly informed counsel of the parties' options when faced with Judge Minaldi's leave, made a proper disclosure to counsel about Monk's daughter, and the parties, through counsel, voluntarily gave their written consent to trial.  The fact that the

---

[8] The case law cited by the Port does not provide otherwise.  In *CEATS, Inc. v. Cont'l Airlines, Inc*., 755 F.3d 1356, 1364 (Fed. Cir. 2014), the Federal Circuit Court found that a mediator has a duty to disclose potential conflicts where impartiality might reasonably be questioned which is analogous to a judge's duty to recuse under 28 U.S.C. § 455(a) (if the basis for recusal is not waived).   The CEATS court then found that the mediator failed to disclose a present relationship with a law firm involved in the mediation because of the potential appearance of impropriety.  Nevertheless, the court refused to set aside the judgment on that basis.

Further, despite its assurances that the law on recusal and bias is not applicable to its motion, the Port relied on *United States v. Murphy,* 768 F.2d 1518 (7th Cir. 1985), where the Seventh Circuit found that a trial judge improperly failed to disqualify himself under 28 U.S.C. § 455(a) when he and one of the attorneys in the case were close friends who planned to vacation together after trial.  The Port's investigation revealed no such evidence in this case.

Port is now unhappy with her factual findings and legal conclusions is not a basis to vacate the

reference.  As a fellow district judge has stated:

> Whenever a party consents to proceed before a magistrate judge, the party may be
> unhappy with many decisions of the magistrate and determine, in hindsight, that
> perhaps the consent should not have been given and the district judge might have
> ruled more favorably or reached the case in a more expeditious fashion. The fact
> that the defendants are not pleased with the manner in which the Magistrate Judge
> deems proper to proceed does not constitute good cause, or extraordinary
> circumstances.

*O'Neal Bros. Const. Co. v. Circle, Inc.,* No. CIV. A. 91-3769, 1994 WL 658468, at *2 (E.D. La.

Nov. 21, 1994).  If the Port is dissatisfied with Magistrate Judge Kay's judgment in this case, it

has the opportunity to appeal and have that decision reviewed, but the Court will not vacate the

reference for the reasons stated.

Finally, the Court finds no reason to allow the Port to obtain discovery to continue a

fishing expedition to support its after-the-fact Motion to Vacate.  That motion, too, is DENIED.

## III.    CONCLUSION

For the foregoing reasons, the Port's motions are DENIED.

MONROE, LOUISIANA, this 15th day of January, 2021.


_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE

12